IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–cv–01869–PAB–KMT

JOHN SMITH #133989,

      Plaintiff,

v.

RANDY ANDERSON, Lieutenant #2448, and
KIP STRODE, Lieutenant #1451,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on Defendants' "Motion to Dismiss" (Doc. No.14, filed December 13, 2010).  Plaintiff filed his Response on January 11, 2011.  (Doc. No. 16 ["Resp."].)[1]

## I.    STATEMENT OF THE CASE

      The following facts are taken from Plaintiff's Complaint and the parties' submissions with respect to this Recommendation.

      Plaintiff is an inmate with the Colorado Department of Corrections ("CDOC").  (Compl. at 2.)  Plaintiff generally asserts that Defendants have violated his due process and equal protection rights.  Plaintiff alleges on October 1, 2008, he was placed in segregation for an

---

[1]Based on the analysis below, the court finds a reply brief unnecessary.  Pursuant to D.C.COLO.LCivR 7.1C., a judicial officer may rule on a motion at any time after it is filed.

investigation of the rape of another inmate.  (*Id.* at 3.)  Plaintiff states he was given notice of the

rape charge and eventually was found guilty of the charge.  (*Id.* at 3.)  On October 10, 2008,

Plaintiff was sentenced to thirty days' punitive segregation and forty-five days' loss of good time

credits.  (*Id.* at 3, 15.)  Plaintiff was given credit for ten days of time served, and his punitive

segregation was to conclude on October 31, 2008.  (*Id.* at 15.)  Plaintiff allege he subsequently

"was deemed a threat and sentenced to Administrative Segregation for years and/or months."

(*Id.* at 3.)

Plaintiff appealed his disciplinary conviction in state court, and the state court judge

ordered that the case be remanded to the CDOC for a new hearing after finding the

"[i]nvestigating/disciplinary officer had abused their discretion, violating [Plaintiff's] due

process rights in not allowing factual evidence and proper documentation on inmates['] refusal

to testify as requested by [Plaintiff]."  (*Id.*)  Plaintiff states that at the remanded hearing, "the

hearing board came to the conclusion there was no evidence a rape had occured [sic]" and found

Plaintiff not guilty.  (*Id.*)  Plaintiff states he was released back into the general population after

over ten months of solitary confinement.  (*Id.*)

Plaintiff asserts two claims for relief.  In Claim One, Plaintiff alleges Defendant

Anderson, the investigating and disciplinary officer, violated his equal protection and due

process rights by not allowing Plaintiff's witnesses to testify in writing and not allowing factual

evidence requested by Plaintiff.  (*Id.* at 4.)  Plaintiff alleges Defendant Anderson abused his

discretion and "has done everything in [his] power to assure the accused is allowed no defense

other than the accused testimony."  (*Id.*)  In Claim Two, Plaintiff alleges Defendant Strode

abused his discretion, thereby violating Plaintiff's equal protection and due process rights, by not allowing Plaintiff's request for the hearing board to review evidence and testimony. (*Id.* at 9.) Plaintiff seeks actual and exemplary damages. (*Id.* at 12.)

Defendants seek dismissal of Plaintiff's claims against them on the bases that (1) Defendants are entitled to Eleventh Amendment immunity in their official capacities; (2) Plaintiff's due process claim relating to his disciplinary actions fails to state a claim upon which relief can be granted; (3) Plaintiff's claim related to subsequent placement in administrative segregation fails to state a claim upon which relief can be granted; (4) Plaintiff's claims for damages are limited by the Prison Litigation Reform Act's ("PLRA") physical injury requirement; and (5) Defendants are entitled to qualified immunity. (*See* Mot. at 3–11.)

## II.   *LEGAL STANDARDS*

### A.   **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se.* The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Assoc. Gen. Contractors of Cal., Inc. v.*

*Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

> **B.      Lack of Subject Matter Jurisdiction**

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909.

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however,

the Court may consider matters outside the pleadings without transforming the motion into one

for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a

party challenges the facts upon which subject matter jurisdiction depends, a district court may

not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion

to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to

resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

### C.      *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss

a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6)

(2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d

1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual

allegations are true and construes them in the light most favorable to the plaintiff." *Hall v.

Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss,

means that the plaintiff pled facts which allow "the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two

prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id*. at 1949–51.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id*. at 1951.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments.  *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1940.  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*,129 S. Ct. at 1949 (citation omitted).

### III.    ANALYSIS

#### A.    Eleventh Amendment Immunity

Plaintiff's Complaint does not specify whether Defendants are sued in their official or individual capacities.  Defendants argue that, to the extent Defendants are sued in their official capacities, they are immune from liability for damages.  (Mot. at 3–4.)

The Eleventh Amendment to the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  It has been interpreted to bar a suit by a citizen against the citizen's own state in federal court.  *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).  Suits against state officials in their official capacity should be treated as suits against the state.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  This is because a suit against a state official in his or her official capacity is a suit against the official's office and therefore is no different from a suit against the state itself.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Eleventh Amendment thus shields state officials, acting in their official capacities, from claims for monetary relief.  *See Hill v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007).  Moreover, a § 1983 action may only be brought against a person.  *See* 42 U.S.C. § 1983.  Neither states nor state officers sued in their official capacity for monetary damages are persons within the meaning of § 1983.  *Will*, 491 U.S. at 70–71.

Plaintiff's claims for monetary relief against the defendants in their official capacities constitute claims against the Colorado Department of Corrections.  *See Will v. Michigan Dep't of*

7

*State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"). Therefore, to the extent Plaintiff asserts claims for monetary relief against the defendants in their official capacities, those claims are barred by the Eleventh Amendment and should be dismissed for lack of subject matter jurisdiction. *See id.*; *Bennett*, 17 F.3d at 1267.

**B.     Due Process Claims**

Defendants argue that Plaintiff has failed to state a due process claim. (Mot. at 4–6.) Generally, a plaintiff must make two showings in order to proceed on a procedural due process claim. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1209 (10th Cir. 2007). First, a plaintiff must demonstrate that he possesses a protected liberty or property interest, and second, a plaintiff must show the procedures utilized were inadequate under the circumstances. *Id.*

**1.     Protected Liberty Interest**

Plaintiff's claim is governed by the Supreme Court's opinion in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), which found that due process liberty interests created by state regulations are "generally limited to freedom from restraint that imposes an atypical and significant hardship on the inmate in relation to ordinary incidents of prison life." The *Sandin* Court expanded upon its analysis in *Wolff v. McDonnell*, 418 U.S. 539 (1974) to determine whether the Due Process Clause afforded an inmate, who received thirty days in punitive segregation following a disciplinary hearing, a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff*. *Id.* at 483–84.

8

Following *Sandin*, the Supreme Court confirmed that an examination of prison rules or regulations themselves is no longer an appropriate method for ascertaining the existence of a liberty interest; rather, courts must look to the conditions of confinement to determine whether the inmate has suffered a "hardship" as set forth in *Sandin*.  *See Wilkinson v. Austin*, 545 U.S. 209, 221–23 (2005); *see also Estate of DiMarco v. Wyo. Dep't of Corrs.*, 473 F.3d 1334, 1339 (10th Cir. 2007) ("[s]tate policies or regulations will not create the basis for a liberty interest in the conditions of confinement so long as they do not impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").  The mere placement in administrative segregation does not, on its own, implicate a liberty interest.  *Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996); *Templemen v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). Indeed, "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration."  *Hewitt v. Helms*, 459 U.S. 460 (1983), *overruled in part on other grounds*.

The Tenth Circuit as developed four factors courts should consider in determining the appropriate baseline comparison and how significant the deviation from the baseline the conditions of confinement must be to create a liberty interest.  *Estate of DiMarco*, 473 F.3d at 1342.  This consideration includes (1) whether the segregation complained of relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) whether the conditions of placement are extreme; (3) whether the placement increases the duration of confinement; and (4) whether the placement is indeterminate.  473 F.3d at 1342.  "[A]ny of these conditions standing alone might not be sufficient to create a liberty interest," and, rather, the

combination of factors could shift the balance in favor of the inmate. *See Wilkinson*, 545 U.S. at 224.

### a.      Legitimate Penological Interest

As to the first factor, Exhibit A to Plaintiff's Complaint states that following the alleged rape, Plaintiff "was immediately removed from population for the safety and security of all individuals involved . . . " and that "he was placed in Segregation pending further investigation." (Compl. at 14.)  Thus, there was a legitimate penological interest in placing Plaintiff in segregation pending investigation of the alleged rape.  Additionally, following a hearing, Plaintiff initially was found guilty of the charges and sentenced to thirty days of punitive segregation to conclude October 31, 2008.  (*See* Compl. at 15.)  The court finds Plaintiff's punitive segregation, which concluded October 31, 2008, was related to and furthered a legitimate penological interest such as safety or rehabilitation.

Plaintiff alleges that he was subsequently "deemed a threat and sentenced to Administrative Segregation for years and/or months."  (*Id.*)  Attached to Plaintiff's Complaint is an Administrative Segregation Hearing Review Form ("Hearing Review Form") dated June 22, 2009 and approved June 26, 2009.  (*Id.*)  The Hearing Review Form notes Plaintiff "was classified as Administrative Segregation on 11/07/08 at [Buena Vista Correctional Center] after he had raped another offender.  He has proven by his actions that he poses a serious threat to the safety of staff, and other offenders as well as the security of the facility."[2]  (*Id.* at 27.)  The

---

[2]The alleged rape occurred at Buena Vista Correctional Center ("BVCC").  (*See* Compl. at 14, 15, 27.)

Hearing Review Form notes that Plaintiff was transferred to Sterling Correctional Facility ("SCF") on February 12, 2009[3], and that he remained in administrative segregation following transfer to SCF.  (*Id.*)

The Hearing Review Form also indicates that "[d]uring previous review periods and prior to his arrival at SCF" Plaintiff had no incident reports or "negative chrons" and that Plaintiff "received another hearing resulting in the overturning of the COPD conviction that brought him to this classification."[4]  (*Id.*)  The review committee recommended "continual placement in AD Seg until proper documentation is received to initiate his release from this classification."  (*Id.*)  Based on the fact that Plaintiff had no reportable incidents or "negative chrons," and based on the fact that the Hearing Review Form indicates no reason for Plaintiff's continued housing in administrative segregation, Plaintiff has a colorable argument that his continued placement in administrative segregation beyond October 31, 2008, did not further a legitimate penological interest.  Plaintiff may make the same argument related to Plaintiff's continued placement in administrative segregation after he was found not guilty of the rape until "proper documentation" had been received to initiate his release.  Therefore, as to the continued housing of Plaintiff in administrative segregation after he served his punitive segregation for the time period October 31, 2008, until he was released from administrative segregation sometime after June 26, 2009–at least eight months–this court finds this factor weighs in favor of Plaintiff.

---

[3]The Hearing Review Form contains a typographical error showing Plaintiff's transfer date as February 12, 2008.  (*Id.* at 27.)

[4]The disciplinary hearing on remand was held on June 11, 2009.  (Compl. at 23–24.)

11

#### b.      Conditions of Confinement

Regarding the second factor, Plaintiff alleges while he was in administrative segregation, he was deprived of general population privileges and liberties and forced to endure ridicule, torment, and harassment from other inmates.  (Compl. at 8.)  Plaintiff states because he was labeled a homosexual rapist by other inmates, those inmates threatened they would throw urine and feces on Plaintiff if he went to the recreation yard.  (*Id.*)  Because of the threats, Plaintiff chose not to go to the recreation yard and "went over 10 months without leaving [his] cell other than handcuffed/escorted to a shower."  (*Id.*)

In *Wilkinson*, 545 U.S. at 223, the Court found that the conditions at a state Supermax facility imposed a significant and atypical hardship where: (1) all human contact was prohibited; (2) the lights were on 24 hours per day; (3) inmates could only exercise one hour per day in a small indoor room; (4) assignment was indefinite; and (5) inmates otherwise eligible for parole were disqualified.  However, in *Jordan v. Federal Bureau of Prisons*, 191 F. App'x 639, 653 (10th Cir. July 25, 2006), the Tenth Circuit agreed with the district court that summary judgment was appropriate on the issue of whether an inmate confined in segregation at ADX and USP-Florence for five years pending a murder investigation had a protected liberty interest.  The inmate alleged that he was denied access to radio, television, education and recreational programs and medical and psychological services.  *Id.* at 644.  Jordan also alleged that he was limited to one social call per month and his interaction with other inmates and recreation were strictly curtailed.  *Id.*

12

It is clear that any due process claim based on an inmate's segregation is highly-fact dependent and the factors should be "viewed in their totality." *Dodge v. Shoemaker*, 695 F. Supp. 2d 1127, 2010 WL 924249, at *10 (D. Colo. Mar. 11, 2010).  Here, the Plaintiff's allegations appear to fall somewhere between the claims made in *Wilkinson* and *Jordan*.  The court finds, at this stage of the case, it is conceivable that Plaintiff could prove facts showing that his housing in administrative segregation was an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484.

### c.      *Duration of Confinement*

Regarding the third factor, Plaintiff has not alleged any effect of his placement in administrative segregation on the duration of his sentence.  Plaintiff does, however, allege a loss of good time credits.  Nevertheless, good time credits do not count toward sentence reduction. *Lusero v. Welt*, 223 F. App'x 780, 784 (10th Cir. 2007) (citing *People v. Swepston*, 822 P.2d 510, 512 (Colo. App. 1991)).  "Thus, [a prisoner's] loss of good time credits [does] not 'inevitably' increase[ ] the duration of his sentence, and accordingly does not give rise to a right to due process."  *Lusero*, 223 F. App'x at 784 (quoting *Klein v. Coblentz*, No. 96-1289, 1997 WL 767538, at *4 (10th Cir. Nov. 19, 1997)).  This factor weighs in Defendants' favor.

### d.      *Indefiniteness of Confinement*

Turning to the fourth factor, Plaintiff alleges he was disciplined with thirty days of punitive segregation.  (Compl. at 3.)  Thus, Plaintiff's original disciplinary conviction was not for an indefinite term.  However, Plaintiff alleges he was kept in administrative segregation beyond the thirty day conviction period for a period of "years and/or months."  (*Id.*)  Plaintiff has

since been released from administrative segregation and returned to the general prisoner

population, which arguably cuts against concluding that his administrative segregation status

was indefinite.  Indeed, most of the decisions that have found an inmate's placement in

administrative segregation to be indeterminate have based that conclusion on the fact that the

inmate was still in segregation at the time of decision.  *See, e.g., Stine v. Lappin*, No.

07-cv-01839-WYD-KLM, 2009 WL 103659, at * 10 (D. Colo. Jan.14, 2009).  Moreover, courts

have found that any indefinite nature of an inmate's administrative segregation status may be

largely mitigated if the inmate is provided periodic reviews of his placement.  *See, e.g.,*

*Lefthandbull v. Hartley*, No. 09-cv-01345-CBS-KLM, 2010 WL 1930250, at *9 (D. Colo.

Apr.20, 2010); *Hunt v. Sapien*, 480 F. Supp. 2d 1271, 1277 (D. Kan. 2007) (placement was not

indefinite where it was reviewed weekly for the first 60 days of confinement, and subsequently

reviewed monthly, after 180 days, and annually).  Here, Plaintiff does not allege, and Defendants

do not argue, that Plaintiff was given any reviews of his administrative segregation status.  Thus,

at this stage in the proceedings, this factor does not weigh in favor of either party.

### e.    *Duration of Confinement*

The court must also consider the duration of Plaintiff's placement in administrative

segregation.  This is because an extended confinement to administrative segregation can, of

itself, constitute an atypical and significant hardship.  *See Payne*, 266 F. App'x 724, 728 (10th

Cir. 2008) (citing *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 806 (10th Cir. 1999); *Freeman*

*v. Watkins*, No. 06-cv-00405-MSK-KMT, 2010 WL 1790427, at *5 n.9 (D. Colo. May 4, 2010).

Unfortunately, Tenth Circuit decisions on when the duration of an inmate's confinement in

administrative segregation alone becomes atypical and significant do not provide clear guidance. In *Payne*, upon reversing the district court's dismissal of the plaintiff's administrative segregation of over three years, the Tenth Circuit pointed to several other cases in which trial courts erred in dismissing inmates' due process claims based on segregated housing assignment ranging between 75 days and three years. *Id.* (citing *Gaines v. Stenseng*, 292 F.3d 1222, 1225–26 (10th Cir. 2002) and *Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir.2006)). However, other cases have held that far more extended confinements in administrative segregation did not suffice to state a due process claim. *See, e.g., Jordan v. Fed. Bureau of Prisons*, 191 F. App'x 639, 652 (10th Cir.2006) (holding that a five-year period of administrative segregation did not amount to an atypical, significant hardship given the legitimate penological interest of investigating inmate's involvement in prison murder).

Nonetheless, here Plaintiff alleges that, in total, he was placed in administrative segregation for over ten months. As such, the court finds that this is not a clear case where Plaintiff's allegations of the duration of his segregation fail to state a liberty interest as a matter of law. *See Sandin*, 515 U.S. at 486 (30 days of segregation insufficient as a matter of law); *Clayton v. Ward*, 232 F. App'x 827, 832 (10th Cir. 2007) (twenty-six day stay in segregation did not assert a liberty interest where the stay "was of relatively a short duration" and no facts were alleged that the confinement was an atypical and significant hardship). Rather, what is clear is that this is a case where Plaintiff's allegations require the court to "conduct an evidentiary analysis to determine whether the duration of the confinement was itself atypical and significant." *Payne*, 266 F. App'x at 728 (citing *Trujillo*, 465 F.3d at 1225). This is simply an

15

analysis that cannot be conducted at this stage of the litigation.  *Id.* (holding that the district court improperly dismissed an inmate's claims on the pleadings without considering whether the duration of confinement in administrative segregation amounted to an atypical and significant hardship).

Balancing the *DiMarco* factors, the court finds that the Complaint, accepting Plaintiff's allegations as true, sufficiently implicates a liberty interest.  Moreover, the court finds that the duration of Plaintiff's confinement–from October 31, 2008, until Plaintiff was released from administrative segregation sometime after June 26, 2009–in administrative segregation alone may implicate a liberty interest.  Accordingly, at this juncture, dismissal for failure to state a liberty interest would be improper.

### 2.  *Adequate Procedural Protections*

Even if a protected liberty interest exists, Plaintiff must still prove that the procedures attendant to the deprivation of that liberty interest were constitutionally inadequate.  Whether such procedures are constitutionally adequate is a flexible determination driven by the demands of the particular situation.  *Wilkinson*, 545 U.S. at 224 (applying the traditional framework governing procedural due process from *Mathews v. Eldridge*, 424 U.S. 319 (1976)).  However, because a prison inmate's liberty is already limited in significant way, the process necessary for the deprivation of a prison inmate's liberty interest in the conditions of his confinement, "while more than minimal, must be evaluated, nonetheless, within the context of the prison system and its attendant curtailment of liberties."  *Id.* at 224–25.  Therefore, due process in a prison conditions case is satisfied where the government allows: "(1) a sufficient initial level of process,

i.e., a reasoned examination of the assignment; (2) the opportunity for the inmate to receive notice and respond to the decision; and (3) safety and security concerns to be weighed as part of the placement decision." *DiMarco*, 473 F.3d at 1344 (citing *Wilkinson*, 545 U.S. at 226-27)).

Further, where an inmate's placement in administrative segregation is prolonged or indefinite, due process requires some sort of periodic review of his status. *See Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983), *overruled in part by Sandin*, 515 U.S. 472; *see also Mcclary v. Kelly*, 237 F.3d 185, 186 (2d Cir. 2001); *Blevins v. Reid*, No. 06-cv-00969-MSK-KMT, 2008 WL 2428941, at *7-8 (D. Colo. 2008). Moreover, courts have recognized that such reviews may not merely be arbitrary or a sham, but have instead found that "due process requires that [an inmate's] situation be reviewed in a meaningful way." *Kelly v. Brewer*, 525 F.2d 394, 400 (8th Cir.1975); *Toevs v. Reid*, No. 06-cv-01620-CBS-KMT, 2009 WL 598258, at *8 (Mar. 6, 2009) (finding an unresolved issue of fact as to whether the plaintiff received meaningful reviews of his administrative segregation status, rather than sham reviews).

Plaintiff generally alleges that the process he received was inadequate because, at his first disciplinary hearing, he was unable to present certain testimony and evidence, and thus the defendants failed to meet the second *DiMarco* factor to satisfy due process. As stated previously, Plaintiff fails to allege that Defendants failed to provide periodic, meaningful reviews of his administrative segregation status. On the other hand, Defendants have altogether failed to address whether Plaintiff sufficiently alleges that the hearing procedures were inadequate or whether any periodic reviews received by Plaintiff were meaningful. Therefore, without more, the court finds that dismissal on grounds that Plaintiff was afforded sufficient

procedural protections in connection with his administrative segregation would be improper.  *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) ("The defendant has the burden of showing that the plaintiff has failed to state a claim for relief"); *CollectACheck, Inc. v. Check Collection & Recovery, Inc.*, No. 09-cv-00186-DME-KMT, 2009 WL 1279329, at *3 (D. Colo. May 6, 2009) (same).

### C.    *Equal Protection Claims*

Plaintiff generally alleges a violation of his right to equal protection.   (*See* Compl. At 4, 9.)  Defendants fail to address Plaintiff's equal protection claims.  However, pursuant to 28 U.S.C. § 1915(e)(2)(B), a district court may dismiss *sua sponte* an *in forma pauperis* action as frivolous or as failing to state a claim upon which relief may be granted.  *Whitney v. New Mexico*, 113 F.3d 1170, 1172–73 (10th Cir. 1997).  Such dismissal is appropriate "if the plaintiff cannot make a rational argument on the law and facts" in support of his claim, or if it is "patently obvious" that the plaintiff could not prevail on the facts alleged, and allowing an opportunity to amend would be futile.  *Id.* (citations and quotations omitted).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  In a case such as this, where no suspect class is involved, to state an equal protection claim, a plaintiff must show that (1) he is similarly situated to other inmates who were treated differently and (2) the difference in treatment bears no rational relation to legitimate

18

penological interests.  *See Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir.2006).  Because of

the wide discretion afforded to prison officials and the many relevant factors these officials may

consider when dealing with inmates, an inmate who is not part of a suspect class faces a difficult

task to state an equal protection claim.  First, there is a presumption in favor of validity of prison

officials' disparate treatment.  *Hill v. Pugh*, 75 F. App'x 715, 720 (10th Cir. 2003).  Second, the

requirement to show that an inmate is "similarly situated" to other inmates is arduous, if not

impossible, as the Tenth Circuit Court of Appeals noted in *Templeman v. Gunter*.  *See* 16 F.3d

367, 371 (10th Cir. 1994) ("it is 'clearly baseless' to claim that there are other inmates who are

similar in every relevant respect"); *see also Fogle*, 435 F.3d at 1261 (quoting *Templeman* in

affirming dismissal of an equal protection claim).

Plaintiff merely conclusorily alleges that the defendants violated his "constitutional rights

of Equal Protection of the laws."  (*See* Compl. at 4, 6, 7, 9.)  Plaintiff has not alleged that he is a

member of a constitutionally protected class.  Plaintiff does not allege that he received different

treatment than any other inmates.  Plaintiff has not identified any specific inmates, how they

were similarly situated, or what more favorable treatment they received with regard to

administrative segregation.  Absent a threshold showing that Plaintiff is similarly situated to

those who allegedly receive favorable treatment, he does not have a viable equal protection

claim.  *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998) (citing *Gehl Group v. Koby*,

63 F.3d 1528, 1538 (10th Cir. 1995)).  Plaintiff's allegations are entirely conclusory and fail to

state an equal protection claim.

### D.     Claims for Emotional Injury Under the PLRA

Defendants assert Plaintiff's § 1983 claims for monetary damages for emotional distress are barred by the PLRA, 42 U.S.C. § 1997e(e).  (Mot. at 9.)  The PLRA provides, in pertinent part: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e) (2008).

Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted.  *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) (applying section 1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).  Although section 1997e(e) bars recovery of mental or emotional injury damages absent an allegation of physical injury, it does not bar recovery of punitive damages, declaratory relief, or nominal damages.  *Id.* at 881 (noting that punitive damages may be awarded for constitutional violations without a showing of compensable injury); *Perkins v. Kansas Dept. of Corrs.*, 165 F.3d 803, 808 (10th Cir. 1999).

Plaintiff alleges Defendants' actions have resulted in threats of torment, "ridicule and speculation of he worst kind," and "over 10 months of humiliation and degradation."  (Compl. at 8–9.)  The definition of the adjective "physical" is "of or relating to the body."  MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 935 (11th ed. 2007).  The PLRA provides no statutory definition for the term "physical injury."  42 U.S.C. § 1997e *et seq*.  While the PLRA requires "physical injury," the threshold may not be particularly high.  *See Mitchell v. Horn*, 318 F.3d 523, 534–36 (3d Cir. 2003) ("We therefore follow the approach of the Fifth, Ninth, and Eleventh

20

Circuits in requiring a less-than-significant-but-more-than-*de minimis* physical injury as a

predicate to allegations of emotional injury"); *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002)

("§ 1997e(e) requires a prior showing of physical injury that need not be significant but must be

more than *de minimis*."); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (suggesting that

the PRLA requirement should be construed consistent with the "well-established Eighth

Amendment standard," and must be more than *de minimis*, but need not be significant).

Plaintiff's allegations fail to allege any physical manifestation–even a *de minimis* injury–relating

to his body or harm caused to his body by Defendants.  Therefore, as the plaintiff has failed

sufficiently to allege physical injury, his compensatory relief claims are barred.

### E.    *Qualified Immunity*

Finally, Defendants argue that they are entitled to qualified immunity because Plaintiff

has not met either prong of the qualified immunity test.  (Mot. at 10–11.)  Whether Defendants

are entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th

Cir. 2007).

> Resolution of a dispositive motion based on qualified immunity involves a
> two-pronged inquiry.  First, a court must decide whether the facts that a plaintiff
> has alleged or shown make out a violation of a constitutional right.  Second, . . .
> the court must decide whether the right at issue was clearly established at the time
> of the defendant's alleged misconduct.  With regard to this second [prong], the
> relevant, dispositive inquiry in determining whether a right is clearly established
> is whether it would be clear to a reasonable officer that his conduct was unlawful
> under the circumstances presented.

*Herrera v. City of Albuquerque,* 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks

and citations omitted).  "A reviewing court may exercise [its] sound discretion in deciding which

of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id.*

> For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (internal citations omitted). Having concluded above that Plaintiff's equal protection claims should be dismissed, the court need only analyze Defendants' qualified immunity argument in relation to Plaintiff's due process claims. Here, the court finds that Supreme Court and Tenth Circuit case law existing at the time of Plaintiff was held in administrative segregation was sufficiently clear to provide Defendants with reasonable notice.

The Supreme Court's decision in *Sandin* marked a significant departure from prior case law by holding that liberty interests may arise from prison conditions that present an atypical, significant deprivation. In *Wilkinson*, the Supreme Court again acknowledged that conditions of confinement, when viewed in combination, can impose an atypical and significant hardship that trigger due process rights. 545 U.S. 209. Thus, in light of the above discussion of Plaintiff's claims, and because *Wilkinson* was decided in June 2005, well in advance of Plaintiff's administrative segregation beginning in October 2008, the court finds the contours of constitutional law were sufficiently clear to put Defendants on notice that the assignment of a

22

prisoner to administrative segregation under conditions that imposed a significant and atypical hardship could give rise to a protected liberty interest. *Thompson*, 2008 WL 901570, at *8; *Dodge*, 695 F. Supp. 2d 1127, 2010 WL 924249, at * 11. Accordingly, at this juncture, the court finds that Defendants should not be entitled to the defense of qualified immunity. However, this does not foreclose Defendants from raising qualified immunity as a defense at a later point in this litigation once the specific circumstances of Plaintiff's confinement in administrative segregation become more clear through discovery and any subsequent evidentiary analysis.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that Defendants' Defendants' "Motion to Dismiss" (Doc. No.14) be GRANTED in part and DENIED in part, as follows:

1.   Plaintiff's official-capacity claims for monetary relief against the defendants should be dismissed without prejudice for lack of subject matter jurisdiction as barred by the Eleventh Amendment;

2.   Defendants' motion to dismiss Plaintiff's due process claims should be denied;

3.   Plaintiff's equal protection claims should be denied for failure to state a claim upon which relief can be granted;

4.   Plaintiff's claims for compensatory relief for emotional distress should be dismissed as barred by the PLRA; and

5.   Defendants' motion to dismiss Plaintiff's due process claims on the basis of qualified immunity should be denied.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 24th day of January, 2011.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge