IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–cv–01869–PAB–KMT

JOHN SMITH #133989,

      Plaintiff,

v.

RANDY ANDERSON, Lieutenant #2448, and
KIP STRODE, Lieutenant #1451,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on Defendants' "Motion for Summary Judgment" (Doc. No.45 ["Mot."], filed December 12, 2011).  Plaintiff filed his Response on January 5, 2012 (Doc. No. 16 ["Resp."]).  Defendants filed their Reply on January 19, 2012 (Doc. No. 48 ["Reply"]). This motion is ripe for recommendation and ruling.

## I.    STATEMENT OF THE CASE

      The following facts are taken from Plaintiff's Complaint.  Plaintiff is an inmate with the Colorado Department of Corrections ("CDOC").  (Compl. [Doc. No. 1] at 2.)  Plaintiff generally asserts that Defendants have violated his due process and equal protection rights.  Plaintiff alleges on October 1, 2008, he was placed in segregation for an investigation of the rape of another inmate.  (*Id.* at 3.)  Plaintiff states he was given notice of the rape charge and eventually was found guilty of the charge.  (*Id.* at 3.)  On October 10, 2008, Plaintiff was sentenced to thirty

days' punitive segregation and forty-five days' loss of good time credits.  (*Id.* at 3, 15.)  Plaintiff

was given credit for ten days of time served, and his punitive segregation was to conclude on

October 31, 2008.  (*Id.* at 15.)  Plaintiff alleges he subsequently "was deemed a threat and

sentenced to Administrative Segregation for years and/or months."  (*Id.* at 3.)

Plaintiff appealed his disciplinary conviction in state court, and the state court judge

ordered that the case be remanded to the CDOC for a new hearing after finding the

"[i]nvestigating/disciplinary officer[s] had abused their discretion, violating [Plaintiff's] due

process rights in not allowing factual evidence and proper documentation on inmates['] refusal

to testify as requested by [Plaintiff]."  (*Id.*)  Plaintiff states that at the remanded hearing, "the

hearing board came to the conclusion there was no evidence a rape had occured [sic]" and found

Plaintiff not guilty.  (*Id.*)  Plaintiff states he was released back into the general population after

over ten months of solitary confinement.  (*Id.*)

The only claim remaining is Plaintiff's due process claim asserted against the defendants

in their individual capacities.  (*See* Doc. No. 29, District Judge William J. Martínez's Order

Adopting and Affirming Recommendation of United States Judge.)

## II.   *UNDISPUTED MATERIAL FACTS*

The following facts relevant to this Recommendation are undisputed.

1.   At all times relevant to the remaining claims in this case, Plaintiff, John Smith,

was an inmate in the custody of the Colorado Department of Corrections (CDOC).  (Compl. at 2,

¶ 1).

2.      At all times relevant to the claims in this case, Defendants worked at the Buena Vista Correctional Complex.  (*See* Mot., Ex. A-1 [Strode Aff.], ¶ 2; Ex. A-2 [Anderson Aff.], ¶ 1.)

3.      At all relevant times, Defendant Kip Strode was a Lieutenant at BVCC and was assigned primarily as the Hearing Chairperson in charge of conducting hearings with offenders alleged to have violated the Code of Penal Discipline (COPD).  (Ex. A-1, ¶ 2.)

4.      At all relevant times, Defendant Randy Anderson was the Disciplinary Officer at the BVCC responsible for investigating and presenting the State's case against offenders alleged to have violated the COPD.  (Ex. A-2, ¶¶ 1–2.)

5.      In COPD Case No. 090499-I, Plaintiff was charged with Rape, a Class I, Rule 9 violation of the COPD.  (Ex. A1., ¶ 5.)

6.      The Notice of Charge(s) states that on October 1, 2008, Plaintiff entered the cell of another offender in the North Unit.  (*Id.*, ¶ 6.)

7.      On October 7, 2008, Plaintiff was served with the Notice of Charge(s) advising him that he had been charged with Rape, a Class I, Rule 9 violation of the COPD.  (*Id.*, ¶ 8.)

8.      Based upon the Notice of Charge(s), a COPD disciplinary hearing was held on October 10, 2008.  (*Id.,* ¶ 9).

9.      Defendant Anderson was the Disciplinary Officer who investigated and presenting the State's case against Plaintiff in this COPD.  (Ex. A-2, ¶ 4.)

10.     Defendant Strode was the Hearing Chairperson over the hearing.  (Ex. A-1, ¶ 10.)

11.     There were two other individuals who, with Defendant Strode, composed the hearing panel.  (*Id.*, ¶ 4.)

12.     Plaintiff chose to testify on his own behalf.  (*Id.*,¶ 16.)

13.     At the conclusion of the hearing, the hearing panel found Plaintiff was guilty of the charge of rape.  (*Id.*, ¶ 17.)

14.     Plaintiff was given 30 days' punitive segregation and 45 days' loss of good time.  (*Id.*, ¶ 18.)

15.     Plaintiff was given credit for 10 days' time served from October 1, 2008 to October 10, 2008.  (*Id.*)

16.     Plaintiff was then referred to and was given an administrative segregation classification review.  (*Id.*, ¶ 19; *see also* Ex. A-3, Notice for Administrative Segregation Hearing.)

17.     Use of administrative segregation is a preventive and management assignment process and is to be distinguished from punitive and disciplinary segregation.  (Ex. A-1, ¶ 20; Ex.  A-2, ¶ 12.)

18.     Offenders placed in administrative segregation are reclassified and placed there through an administrative segregation classification hearing as a result of inappropriate behavior while in general population or other institutions that is deemed to threaten the safety of others and/or the security of the facility.  (*Id.*)

19.     The administrative segregation classification process is set forth in CDOC Administrative Regulation 600-02.  (*Id.*)

4

20.     Pursuant to this process, offenders are provided with a notice of placement in administrative segregation containing a summary of the factual basis upon which they are being considered for placement in administrative segregation, a hearing at which they may present evidence and challenge the grounds for placing them in administrative segregation, and a written disposition of the hearing board/hearing officer's determination.  (Ex. A-1, ¶ 21; Ex. A-2, ¶ 13.)

21.     The classification committee's decision is reviewed by the Administrative Head, and, if the determination is that the offender should be placed in administrative segregation, the decision is forwarded to Offender Services staff at CDOC Headquarters for final approval.  (Ex. A-1, ¶ 22; Ex. A-2, ¶ 14.)

22.     On October 20, 2008, Plaintiff was served with a copy of the Notice for Administrative Segregation Hearing.  (Ex. A-3.)

23.     An administrative segregation hearing was scheduled for October 22, 2008.  (*Id.*)

24.     At the conclusion of the hearing, the Classification Committee found that Plaintiff should be recommended for placement in administrative segregation.  (Ex. A-3, Classification Summary – Administrative Segregation Hearing.)

25.     Once reclassified and placed in administrative segregation, Plaintiff's placement in administrative segregation at BVCC was reviewed by the classification officer, Keith Valerio, from October 22, 2008 until February 12, 2009 when Plaintiff was transferred to the Sterling Correctional Facility (SCF).  (Ex. A-4 [Valerio Aff.], ¶ 3.)

26.     During the time, Valerio was responsible for reviewing Plaintiff's placement in administrative segregation as set forth in AR 600-02 and providing a recommendation as to whether he should be retained in administrative segregation.  (*Id.*, ¶ 10.)

27.     Valerio's recommendation would then be reviewed by the Administrative Head of the facility.  (*Id.*)

28.     On February 22, 2009, Plaintiff was transferred to SCF from BVCC.  (Ex. A-5 [Deal Aff.], ¶ 4.)

29.     Upon Plaintiff's arrival at SCF, he was placed in administrative segregation.  (*Id.*)

30.     Offenders' placement in administrative segregation is reviewed periodically by the classification committee.  (*Id.*, ¶ 10.)

31.     Curtis Deal was a member of the classification committees that reviewed Plaintiff's placement in administrative at SCF.  (*Id.* ,¶ 12.)

32.     Because Plaintiff was initially placed in administrative segregation at BVCC, by the time he was transferred to SCF, his periodic reviews took place every 30 days.  (*Id.*, ¶ 11.)

33.     The only method by which an offender can be returned to general population is through review and approval by the Warden or his/her designee.  (*Id.*, ¶ 9.)

34.     While Plaintiff was being housed in administrative segregation, he sought judicial review of his COPD conviction through an action under Colo. R. Civ. P. 106.  (Ex. A-2, ¶ 16.)

35.     On May 20, 2009, the Chaffee County District Court in case number 08cv120 remanded this matter for a new hearing, finding a procedural error had occurred during the course of the initial disciplinary hearing held on October 10, 2008.  (*Id.*,¶ 17.)

6

36.    A new hearing was conducted on June 1, 2009.  (*Id.*, ¶ 18.)

37.    After the disciplinary hearing held on June 1, 2009, the COPD hearing committee found Plaintiff not guilty of the alleged violation of rape.  (Ex. A-5, ¶ 25.)

38.    An expungement order was issued on June 18, 2009.  (*Id.*, ¶ 26.)

39.    During Plaintiff's next periodic review on July 26, 2009, because the classification committee received the proper COPD documentation indicating that Plaintiff's conviction for rape had been overturned and because Plaintiff's behavior was proper in all other respects, the classification committee recommended that he not be retained in administrative segregation.  (*Id.*, ¶ 28.)

40.    Plaintiff then was seen by the Warden on July 28, 2009, and approved for release back into general population.  (*Id.*, ¶ 29.)

41.    Neither Strode nor Anderson were involved in any capacity in the periodic reviews after Plaintiff had been placed in administrative segregation.  (Ex. A-1, ¶ 23; Ex. A-2, ¶ 15.)

## III.    *LEGAL STANDARD*

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works, Inc. v. City & County of Denver*,

36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The nonmoving party

may not rest solely on the allegations in the pleadings, but must instead designate "specific facts

showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P.

56(c).  A disputed fact is "material" if "under the substantive law it is essential to the proper

disposition of the claim."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998)

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the

evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.

*Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*,

477 U.S. at 248).

    When ruling on a motion for summary judgment, a court may consider only admissible

evidence.  *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010).  The

factual record and reasonable inferences therefrom are viewed in the light most favorable to the

party opposing summary judgment.  *Concrete Works*, 36 F.3d at 1517.  Moreover, because

Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and

hold[s] them to a less stringent standard than those drafted by attorneys."  *Trackwell v. United

States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404

U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards

than formal pleadings drafted by lawyers").  At the summary judgment stage of litigation, a

plaintiff's version of the facts must find support in the record.  *Thomson v. Salt Lake Cnty.*, 584

F.3d 1304, 1312 (10th Cir. 2009).  "When opposing parties tell two different stories, one of

which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court

8

should not adopt that version of the facts for purposes of ruling on a motion for summary

judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## IV.   ANALYSIS

### A.   *Due Process Claim Related to Punitive Segregation*

Generally, a plaintiff must make two showings in order to proceed on a procedural due

process claim.  *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1209 (10th

Cir. 2007).  First, a plaintiff must demonstrate that he possesses a protected liberty or property

interest, and second, a plaintiff must show the procedures utilized were inadequate under the

circumstances.  *Id.*  Defendants argue that, to the extent Plaintiff's remaining due process claim

encompasses his time in punitive segregation serving the sanctions imposed as a result of his

disciplinary conviction for rape, Plaintiff cannot show he has a protected liberty interest.  (Mot.

at 13–14.)

Plaintiff's claim is governed by the Supreme Court's opinion in *Sandin v. Conner*, 515

U.S. 472, 484 (1995), which found that due process liberty interests created by state regulations

are "generally limited to freedom from restraint that imposes an atypical and significant hardship

on the inmate in relation to ordinary incidents of prison life."  The *Sandin* Court expanded upon

its analysis in *Wolff v. McDonnell*, 418 U.S. 539 (1974), to determine whether the Due Process

Clause afforded an inmate who received 30 days in punitive segregation following a disciplinary

hearing a protected liberty interest that would entitle him to the procedural protections set forth

in *Wolff*.  *Id.* at 483–84.

Following *Sandin*, the Supreme Court confirmed that an examination of prison rules or regulations themselves is no longer an appropriate method for ascertaining the existence of a liberty interest; rather, courts must look to the conditions of confinement to determine whether the inmate has suffered a "hardship" as set forth in *Sandin*. *See Wilkinson v. Austin*, 545 U.S. 209, 221–23 (2005); *see also Estate of Miki Ann DiMarco v. Wyoming Dep't of Corrs.*, 473 F.3d 1334, 1339 (10th Cir. 2007) ("[s]tate policies or regulations will not create the basis for a liberty interest in the conditions of confinement so long as they do not impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). In fact, in Colorado, state laws and regulations themselves do not entitle inmates to remain in the general population absent certain conduct. *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994).

Under *Sandin* and its progeny, then, a right to due process in a disciplinary hearing arises only when the punishment imposes an atypical and significant hardship on the inmate in relation to ordinary incidents of prison life or when it will inevitably affect the duration of a sentence. *See Sandin*, 515 U.S. at 484, 487. Thus, the first question to address is whether an inmate's punishment imposed following a disciplinary hearing gives rise to a right to due process in the hearing under the Fourteenth Amendment. In this case, to prove that he suffered a due process violation, the Plaintiff must demonstrate that the sanctioned restraint imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. If so, then the court must determine whether the Plaintiff received due process in his disciplinary hearing.

A "significant and atypical hardship" sufficient to create a liberty is one that is of substantial degree (*i.e.*, whether such conditions do more than mirror those in administrative

10

segregation and protective custody) and duration.  *See Gaines v. Stenseng*, 292 F.3d 1222, 1226

(10th Cir. 2002).  For example, the Supreme Court determined that the government created a

liberty interest subject to due process protections when officials placed an inmate indefinitely in

a super-max prison where almost all human contact was prohibited and that made the inmate

ineligible for parole.  *Wilkinson*, 545 U.S. at 224.  Moreover, the Tenth Circuit found an inmate's

allegations that, for a three-year period, he was confined to his cell for all but five hours each

week and denied access to the telephone, showers, outdoor recreation, the law library and

programs offered to general population, arguably implicated procedural due process concerns.

*See Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006).

　　　　However, in *Sandin*, the Supreme Court determined that the inmate's confinement in

punitive segregation, which (with insignificant exceptions) mirrored the conditions imposed on

inmates in administrative segregation, did not exceed similar, but totally discretionary,

confinement in either duration or degree of restriction.  *Sandin*, 515 U.S. at 486. As such, the

inmate's punitive confinement of 30 days did not present the type of atypical, significant

deprivation in which a State might create a liberty interest.  *Id.*  In *Gaines*, the Tenth Circuit

noted that "[d]isciplinary segregation for some lesser period [than seventy-five days] could fail

as a matter of law to satisfy the 'atypical and significant' requirement in a case in the future,

thereby making it futile to allow the *pro se* plaintiff to amend his complaint."  *Gaines*, 292 F.3d

at 1296.

　　　　Here, it is undisputed that the punitive segregation imposed on the plaintiff at the

disciplinary hearing was only 30 days' punitive with 10 days' credit for time served.  (Ex. A-1,

¶¶ 18–19.)   Accordingly, the court finds that Plaintiff has failed to demonstrate on supported facts that the punishment imposed at the challenged disciplinary hearing was more than 30 days' segregation.  Guided by the principles of by *Sandin*, *Gaines*, and *Wilkinson*, the court finds that Plaintiff's punitive segregation lasting only 30 days does not constitute a significant duration necessary to demonstrate an "atypical and significant hardship."

Regarding the degree of confinement, the Tenth Circuit has developed four factors that may be relevant in determining the appropriate baseline comparison and how significant the deviation from the baseline the conditions of confinement must be to create a liberty interest: (1) whether the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) whether the conditions of placement are extreme; (3) whether the placement increases the duration of confinement as it did in Wilkinson; and (4) whether the placement is indeterminate.  *Estate of DiMarco*, 473 F.3d at 1342.  Any assessment of these factors must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts.  *Id.* (citing *Sandin*, 515 U.S. at 482–484).

Here, regarding the first factor, it is undisputed that at the conclusion of the disciplinary hearing, the hearing panel found that Plaintiff was guilty of the charge of rape.  (Ex. A-1, ¶ 17.) Thus, the court finds Plaintiff's punitive segregation, which concluded October 31, 2008, was related to and furthered a legitimate penological interest such as safety or rehabilitation.  With respect to the second factor, Plaintiff alleges while he was in administrative segregation, he was deprived of general population privileges and liberties and forced to endure ridicule, torment,

and harassment from other inmates.  (Compl. at 8.)  Plaintiff states because he was labeled a

homosexual rapist by other inmates, those inmates threatened they would throw urine and feces

on Plaintiff if he went to the recreation yard.  (*Id.*)  However, Plaintiff concedes that because of

this he <u>chose</u> not to go to the recreation yard.  (*Id.*)  Plaintiff presents nothing more regarding the

"extremity" of conditions in segregation; thus, the court cannot conclude that Plaintiff's

conditions of confinement exceed conditions typically imposed on inmates in administrative

segregation and protective custody.  *See Sandin*, 515 U.S. at 486.  Consequently, the court finds

that this factor weighs against a determination that the degree of confinement is "atypical and

significant."

Regarding the third factor, Plaintiff has not alleged any effect of his placement in

punitive segregation on the duration of his sentence.  Plaintiff does, however, allege a loss of

good time credits.  Nevertheless, good time credits do not count toward sentence reduction.

*Lusero v. Welt*, 223 F. App'x 780, 784 (10th Cir. 2007) (citing *People v. Swepston*, 822 P.2d

510, 512 (Colo. App. 1991)).  "Thus, [a prisoner's] loss of good time credits [does] not

'inevitably' increase[ ] the duration of his sentence, and accordingly does not give rise to a right

to due process."  *Lusero*, 223 F. App'x at 784 (quoting *Klein v. Coblentz*, No. 96-1289, 1997 WL

767538, at *4 (10th Cir. Nov. 19, 1997)).  This factor weighs in Defendants' favor.

Finally, with respect to the fourth factor, the terms of Plaintiff's punitive segregation

were limited to 30 days.  As a result, the court finds that Plaintiff has failed to demonstrate on

supported facts that the conditions of confinement in punitive segregation are of a significant

degree pursuant to *Sandin*.  The court also finds that Plaintiff has failed to establish on supported

13

facts a liberty interest sufficient to warrant due process protections in the disciplinary hearing. *See Sandin*, 515 U.S. at 484, 487.

Therefore, the court recommends that Defendants be granted summary judgment on Plaintiff's due process claim related to the punitive segregation ending October 31, 2008.

### B. *Personal Participation in Administrative Segregation Beyond October 31, 2008*

Defendants argue that Plaintiff's due process claim extending to his classification and placement in administration fails because he cannot show the requisite personal participation by the defendants. (Mot. at 15–17.)  Personal participation is an essential element of a § 1983 civil rights action.  *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976).  To establish personal liability, a plaintiff must show that the official caused the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise.  *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir.1993).  In other words, "for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established."  *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006).

Use of administrative segregation is a preventive and management assignment process and is to be distinguished from punitive and disciplinary segregation. (Ex. A-1, ¶ 20.)  Offenders placed in administrative segregation are reclassified and placed there through an administrative segregation classification hearing as a result of inappropriate behavior while in general population or other institutions that is deemed to threaten the safety of others and/or the security

of the facility. (*Id.*) Pursuant to this process, offenders are provided with a notice of placement in administrative segregation containing a summary of the factual basis upon which they are being considered for placement in administrative segregation, a hearing at which they may present evidence and challenge the grounds for placing them in administrative segregation, and a written disposition of the hearing board/hearing officer's determination. (*Id.*, ¶ 21.) The classification committee's decision is reviewed by the Administrative Head, and, if the determination is that the offender should be placed in administrative segregation, the decision is forwarded to Offender Services staff at CDOC Headquarters for final approval. (*Id.*, ¶ 22.) Offenders placement in administrative segregation is reviewed periodically and those reviews take place every seven days for the first two months of confinement in administrative segregation and then every 30 days thereafter. (Ex. A-4, ¶ 11.)

The evidentiary record here shows that on October 20, 2008, Plaintiff was served with a copy of the Notice for Administrative Segregation Hearing. (Ex. A-3.) An administrative segregation hearing was scheduled for October 22, 2008. (*Id.*) At the conclusion of the hearing, the Classification Committee found that Plaintiff should be recommended for placement in administrative segregation. (Ex. A-3.) Once reclassified and placed in administrative segregation, Plaintiff's placement in administrative segregation at BVCC was reviewed by the classification officer, Keith Valerio, from October 22, 2008 until February 12, 2009 when Plaintiff was transferred to the Sterling Correctional Facility (SCF). (Ex. A-4, ¶ 3.) Plaintiff remained in administrative segregation at SCF from his arrival on February 12, 2009, until his return to general population was approved by the Warden on July 28, 2009. (*Id.*, ¶ 8.)

Defendants assert they were not involved in Plaintiff's administrative segregation process. (Ex. A-1, ¶ 23; Exhibit A-2, ¶ 15.)  Plaintiff disputes this assertion, responding that, "without Kip Strode and Randy Anderson's finding of guilty and violating [Plaintiff's] constitutional rights of due process an administrative segregation process would [have] never been a factor in the first place.  Any and all negative factors that have surrounded the plaintiff concerning this matter 'all' go[ ] back to Kip Strode and Randy Anderson having violated the Plaintiff's constitutionally protected rights of due process."  (Resp. at 3.)  Nevertheless, the court finds Defendants have met their initial burden of showing an absence of evidence to support Plaintiff's case.  *Celotex Corp.*, 477 U.S. at 325.  On the other hand, Plaintiff has failed to present evidence to meet his burden to demonstrate a genuine issue for trial in this regard.  *Concrete Works, Inc.*, 36 F.3d at 1518.  The undisputed evidence shows that the defendants did not personally participate in Plaintiff's classification and placement in administrative segregation.  Additionally, it is undisputed that neither Defendant Strode nor Defendant Anderson were involved in any capacity in the periodic reviews after Plaintiff had been placed in administrative segregation.  (Ex. A-1, ¶ 23; Exhibit A-2, ¶ 15.)  Therefore, Defendants are entitled to summary judgment on Plaintiff's remaining due process claims related to his classification and placement into administrative segregation after his release from punitive segregation due to their lack of personal participation.

WHEREFORE, for the foregoing reasons, the court respectfully

**RECOMMENDS** that Defendants'"Motion for Summary Judgment" (Doc. No.45 ) be **GRANTED**.  The court further

**RECOMMENDS** that the District Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this recommendation and order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962). Thereafter, if Plaintiff files a notice of appeal he also must pay the full $455.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days of the court's final order in accordance with Fed. R. App. P. 24.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 24th day of August, 2012.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge